OPINION
{¶ 1} Plaintiff-Appellant, Theresa Moore, appeals a Shelby County Common Pleas Court, Domestic Relations Division, decision, which granted her a divorce from Defendant-Appellee, Walter Moore, allocated parental rights and responsibilities with respect to the parties' minor children, and distributed marital assets and liabilities. Theresa's primary arguments on appeal relate to the valuation of the parties' business, A B Leasing, and the trial court's property distribution. With regard to the business valuation, the trial court had discretion to find Walter's expert's testimony to be more credible based upon his experience with the trucking industry and other factors not taken into consideration by Theresa's expert. Furthermore, the record does not demonstrate that the trial court abused its discretion in dividing the marital assets and liabilities.
 {¶ 2} Theresa and Walter were married in 1979, and two children were born as issue of the marriage. On February 22, 2000, Theresa filed for divorce, claiming adultery, extreme cruelty, gross neglect of duty, and incompatibility. Theresa further requested and was granted an order enjoining Walter from transferring marital property during the pendency of the action. Theresa was also awarded temporary spousal support in an amount of twenty-five dollars per week. Throughout the pendency of the action, both parties filed multiple contempt motions, claiming violations of the court's temporary orders.
 {¶ 3} During the parties' marriage, Walter was the primary bread-winner and Theresa was a stay-at-home mother for the parties' children. Walter became a sole proprietor of a trucking company called A B Leasing; however, throughout its existence, Theresa assisted Walter in handling the company's financial transactions, such as writing checks to pay bills. A B Leasing is contracted through KBT Trucking to deliver goods for Perfection Bakery, a client of KBT Trucking. As its sole source of revenue, A B Leasing is dependent upon the business derived from the contract with KBT Trucking. Walter's income, derived both from A B Leasing and his individual trucking contracts, is approximately $50,000 a year. Because A B Leasing failed to make necessary payments to the Bureau of Worker's Compensation ("BWC") or file income taxes for several years, liens were acquired against the parties' primary marital residence.
 {¶ 4} Hearings on the divorce complaint were heard before the magistrate on January 30, 2001 and February 27, 2001. Because the parties entered into an agreed shared parenting plan, the primary issues to be determined revolved around the distribution of the parties' assets and debts, especially with regard to the value of A B Leasing. The magistrate relied upon the value assigned to A B Leasing by the court's retained expert. In the absence of adequate records to formulate an accurate present value of the business, the expert valued the business at an estimated $50,000 for start-up costs.
 {¶ 5} The trial court adopted the magistrate's recommendations with the exception of the valuation of A B Leasing, remanding the cause for a hearing on the sole issue of valuing the business. In response, both parties hired experts and stipulated to the documentary evidence to be utilized for the valuation. The magistrate found Walter's expert more credible, recommending that the business be valued at zero, which was subsequently adopted by the trial court.
 {¶ 6} Additionally, in dividing the marital property, Theresa was awarded the parties' primary residence, assuming the mortgage thereon, and the automobile she typically drove. Walter was awarded the parties' second residence, several automobiles, A B Leasing, and the trucks used in connection with the business. However, Walter also assumed $101,742.48 in marital debt, including the BWC and tax liens. To equalize the debt ratio between the parties, Theresa was ordered to pay Walter $14,807.49.
 {¶ 7} From the trial court's entry of divorce Theresa appeals, asserting eight assignments of error for our review. Because her third, fourth, sixth, and seventh assignments will be resolved using similar rationale and because her fifth and eighth assignments also overlap, we have elected to combine our discussion accordingly.
 Assignment of Error I
The court erred in valuing A B Leasing at zero.
 {¶ 8} For her initial assignment of error, Theresa maintains that the trial court improperly relied upon Walter's expert witness' valuation of A B Leasing, claiming that the valuation method employed by her expert was more reliable.
 {¶ 9} Determinations as to an expert's qualifications to testify on a particular subject are within the sound discretion of the trial court.[1] Accordingly, decisions concerning the admission or exclusion of expert testimony will not be disturbed absent an abuse of discretion, which connotes that the trial court's decision was arbitrary or unreasonable.[2] Further, when determining the value of marital assets, domestic relations courts are not required to use a particular valuation method.[3] As the trier of fact, the trial court has the responsibility to resolve questions of fact and weigh the credibility of the testimony and evidence.[4]
 {¶ 10} Here, we cannot say that the trial court abused its discretion in deciding to believe Walter's expert, Daniel Thompson, and value the business at zero. Testimony indicates that Thompson was more experienced, both in dealing with the trucking industry, including having several trucking companies as current clients, and in valuing trucking concerns. Thompson also took into account that A B Leasing has a lack of a customer and employee base, management team, ongoing contracts, longstanding relationships with financial institutions, established earnings history, and maintenance facilities, noting that A B Leasing relies exclusively on KBT Trucking for its business and drivers, although KBT Trucking is not dependent upon A B Leasing. For these reasons, without the relationship that Walter has with KBT Trucking, an outside buyer would have nothing other than the hard assets of A B Leasing, i.e., the trucks, which were separately included into the trial court's allocation of marital assets and debts. Additionally, Thompson referred the trial court to miscalculations and discrepancies in the valuation formulated by Theresa's expert. Accordingly, we find it reasonable that the trial court relied upon Walter's expert in determining that A B Leasing has no value in excess of its hard assets.
 Assignment of Error II
The court erred in failing to find Defendant Walter J. Moore in contempt of court and/or in violation of the restraining order resulting in an inequitable division of property for the following reasons.
 {¶ 11} Theresa claims that the trial court erred in failing to hold Walter in contempt for transferring and removing funds from marital bank accounts, for failing to provide necessary financial documentation to the court's expert for the purpose of valuing A B Leasing, and for transferring A B Leasing to his girlfriend in violation of the court's restraining order. Based upon the following, we disagree.
 {¶ 12} In order to hold a party in contempt, a trial court must find by clear and convincing evidence that the alleged contemnor has failed to comply with prior court orders.[5] Additionally, a party cannot be held in contempt if it is not within that party's power to comply with the court.[6] An appellate court will not reverse a trial court's decision concerning contempt absent an abuse of discretion.[7]
Thus, if the trial court's refusal to find a party in contempt is reasonable, we will not overturn the decision.
 {¶ 13} Theresa first argues that Walter should have been found in contempt because he transferred funds from existing personal and business accounts to a newly acquired account in violation of the court's restraining order prohibiting the transfer of marital assets. The evidence demonstrates that at the time the parties separated, Walter took over the business account at Provident Bank. Thereafter, because of multiple overdrafts, Walter closed the account and opened another business account at Mutual Federal Savings Bank under the name of A B Leasing. Theresa claims that in making the transfer, Walter has left $29,742.86 unaccounted for. The testimony and documentary evidence, however, shows that A B Leasing was losing money during this period and that Walter had to borrow $25,000 from his mother in order to meet business expenses. Thus, the trial court found that Walter had not misused any accounts and was merely attempting to keep the business going for both parties' benefit. Based upon the record, we cannot say that the trial court's decision in this regard was unreasonable.
 {¶ 14} Theresa further maintains that Walter should have been held in contempt for failing to provide adequate documentation to the court's expert for the purpose of valuing A B Leasing. While Walter did provide business documentation to the expert, the documentation was insufficient to allow an accurate valuation. In his written report, the court's expert acknowledged his belief that reliable business records did not exist for A B Leasing. Upon remand, the parties exchanged available information concerning A B Leasing in order for their respective experts to value the business. Moreover, the parties, pursuant to an agreed judgment entry, stipulated that the exchange of evidence constituted an accurate summary of the business information that would serve as the basis for the valuation of A B Leasing by both experts. In light of these facts, we do not find that the trial court abused its discretion in not finding Walter in contempt for failing to provide adequate business records to the court's expert.
 {¶ 15} Lastly, Theresa contends that Walter should have been found in contempt for allegedly transferring A B Leasing to his current girlfriend in violation of the court's restraining order. At the outset, we note that both parties concede that there was no direct evidence of the purported transfer before the trial court. Additionally, the trial court found that since A B Leasing had no value, the contempt motion concerning this issue was rendered moot, as the transfer would have no bearing on the property division in the case. As such, we do not find that the trial court abused its discretion in failing to hold Walter in contempt concerning the purported transfer of A B Leasing to his girlfriend.
 {¶ 16} For all of these reasons, Theresa's second assignment of error is overruled.
 Assignment of Error III
The court erred in considering the federal and BWC tax liens as marital debt.
 Assignment of Error IV
The court erred in failing to determine the precise amount of the federal and BWC tax liens and requiring Dependant [sic] to satisfy the liens in a timely manner thus depriving Plaintiff of her use and enjoyment of the real estate awarded to her.
 Assignment of Error VI
The court erred in requiring Plaintiff Teresa Moore to pay one half of the fee charged by court expert appraiser Philip Brandt since Mr. Brandt was unable to provide expert testimony as the result of Defendant Walter J. Moore's refusal to provide the necessary documentation.
 Assignment of Error VII
The court erred in refusing to grant judgment to Plaintiff for the arrearages in child support and temporary spousal support from the temporary orders of the court.
 {¶ 17} Theresa's arguments within her third, fourth, and sixth assignments of error derive directly from the conclusions of law contained in the magistrate's decision. Theresa, however, did not object to those conclusions as Civ.R. 53(E)(3) requires. With respect to the third and fourth assignments, Theresa lodged initial objections to issues concerning the liens in question and simultaneously requested leave to supplement her objections upon reviewing the transcript. After reviewing the transcript, she withdrew the objections relating to the liens. Civ.R. 53(E)(3)(b) prohibits a party from "assign[ing] as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."[8]
Thus, assignments three, four, and six are not properly before this court.
 {¶ 18} With regard to her seventh assignment of error, Theresa not only failed to timely raise the issues concerning temporary spousal support in her objections to the magistrate's decision, but she further failed to raise the issue of any arrearage in relation thereto by motion or present evidence concerning any arrearage at the divorce hearings. It is axiomatic that "[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."[9] For these reasons, Theresa's seventh assignment of error is also not properly before this court.
 {¶ 19} Accordingly, Theresa's third, fourth, sixth, and seventh assignments of error are hereby overruled.
 Assignment of Error V
The court erred in rendering a decision which required Plaintiff Teresa Moore to pay money to Walter J. Moore since the evidence indicated on its face that there was an impossibility of performance.
 Assignment of Error VIII
The court erred in failing to make an equitable distribution of property pursuant to O.R.C. Section 3105.171(C)(1).
 {¶ 20} In her fifth and eighth assignments of error, Theresa contends that the division of the parties' marital assets and debts was inequitable and that she is unable to pay Walter $14,782.49 in order to equalize the property division. However, trial courts have broad discretion to determine the value of marital assets and to fashion an equitable property division according to the circumstances of each case before it.[10] In determining whether the decision was fair, equitable, and in accordance with the law, an appellate court cannot substitute its judgment for that of the trier-of-fact unless the trial court's decision amounts to an abuse of discretion.[11]
 {¶ 21} Herein, Theresa desired to retain the primary marital residence and her automobile, which was granted by the trial court, and the only debt assumed by Theresa was the $27,000 mortgage on the residence. On the other hand, Walter assumed a majority of the marital debt, including the mortgage on the parties' second property, multiple loans on trucks related to A B Leasing, and the BWC and tax liens, amounting to a total of $102,742.48. In order to equalize the property division between the parties, the trial court ordered Theresa to pay Walter $14,807.49. Notably, the "[a]llocation of marital debt is inextricably intertwined with the division of marital property."[12]
Accordingly, after comparing the marital assets and debts assigned to the parties, we find no abuse of discretion in the trial court's determination.
 {¶ 22} Consequently, Theresa's fifth and eighth assignments of error are hereby overruled.
 {¶ 23} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT, P.J., and CUPP, J., concur.
[1] Errington v. Errington, Wyandot App. No. 16-01-17, 2002-Ohio-1419, citing State v. Jones, 90 Ohio St.3d 403, 2000-Ohio-187, citing State v.Awkal, 76 Ohio St.3d 324, 331, 1996-Ohio-395.
[2] Id.
[3] Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 612, citing James v.James (1995), 101 Ohio App.3d 668; Focke v. Focke (1992),83 Ohio App.3d 552, 554.
[4] Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23.
[5] Long v. Long, Marion App. No. 9-2000-58, 2000-Ohio-1801, quotingMoraine v. Steger Motors, Inc. (1996), 111 Ohio App.3d 265, 268.
[6] Corna v. Corna, Cuyahoga App. No. 77111, 2001-Ohio-4223, citingBurma v. Burma (Oct. 7, 1999), Cuyahoga App. No. 74601.
[7] Stuber v. Stuber, Allen App. No. 1-02-65, 2003-Ohio-1795, ¶ 19, citing State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,11.
[8] See, also, State ex rel. Booher v. Honda of Am. Mfg., Inc.,88 Ohio St.3d 52, 53-54, 2000-Ohio-269.
[9] State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus; Pearson v. Wheatley Co. (Oct. 20, 1992), Marion App. No. 9-92-1.
[10] Lee v. Lee, Shelby App. No. 17-01-05, 2001-Ohio-2245, citingSkaggs v. Skaggs (Dec. 4, 1997), Marion App. No. 9-97-18, citing James,101 Ohio App.3d at 681; DeWitt v. DeWitt, Marion App. No. 9-02-41,2003-Ohio-851, ¶ 10.
[11] Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94; Martinv. Martin (1985), 18 Ohio St.3d 292, 294-295.
[12] Dewitt, supra, quoting Samples v. Samples, Washington App. No. 02CA21, 2002-Ohio-5441, ¶ 22, citing DeLevie v. DeLevie (1993),86 Ohio App.3d 531, 537-38; Layne v. Layne (1992), 83 Ohio App.3d 559,568.